UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. S2-4:20CR487 MTS |
| | ) | |
| MICHAEL MONROE, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Michael Monroe, represented by defense counsel Luke

Baumstark, and the United States of America (hereinafter "United States" or "Government"),

represented by the Office of the United States Attorney for the Eastern District of Missouri. This

agreement does not, and is not intended to, bind any governmental office or agency other than

the United States Attorney for the Eastern District of Missouri. The Court is neither a party to

nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's waiver of indictment and voluntary plea of guilty to a superseding information,

charging defendant under Title 18, United States Code, Section 924(o) with conspiracy to

possess and discharge a firearm, in violation of Title 18, United States Code, Section 924(c), the

United States agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the superseding information.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The parties further agree and acknowledge that the Court is neither a party to this agreement nor is the Court bound by the terms of this agreement.

## 3. ELEMENTS:

As to **Count One** of the superseding information, the defendant admits to knowingly conspiring to violate Title 18, United States Code, Section924(c) and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning at a time unknown but including August, 2019 two or more people reached an agreement to commit the crime of possession of a firearm in furtherance of a drug trafficking crime;

2. The defendant voluntarily and intentionally joined in the agreement; and

3. At the time the defendant joined in the agreement or understanding, the defendant knew the purpose of the agreement.

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On August 21, 2019 agents with ATF utilized a confidential informant (CI) to arrange for the purchase of a firearm from defendant Michael Monroe. Monroe was a target of a combined investigation being handled by the ATF and St. Louis County Police. The CI was equipped with a covert recording device and given official funds. The CI had contact with Monroe to confirm the purchase of the gun and arranged to meet at the Dellwood Market, in St. Louis County, within the Eastern District of Missouri. The CI arrived at the Market first and placed a phone call to Monroe, inquiring of his whereabouts. Monroe indicated that he was "on his way" and that he was at "Lilac and 270." The CI waited at the Market for Monroe to arrive. After approximately 20 minutes, Monroe arrived at the Market driving a black Audi A6 with heavily tinted windows and an Illinois temporary license tag (he arrived at approximately 2:47 p.m.). His passenger was known to the CI as the brother of "Los." Investigators later determined that the passenger was Treyvon Perry, who has a brother named Carlos, a/k/a "Los."

Monroe exchanged a Ruger, Model P89 9mm semi-automatic pistol and a magazine containing ammunition with the CI for $325 in cash. The CI exited Monroe's vehicle and then called investigators. He indicated that the front passenger – Treyvon Perry - was armed with a gun and that he was a "light-skinned" African American, wearing no shirt.

In the meantime, investigators learned that a shooting had occurred at approximately 2:35 p.m. on westbound Highway I-270 near Old Halls Ferry Road, in north St. Louis County. The

3

initial report, later confirmed through the investigation, was that the passenger of a black Audi A6 (with heavily tinted windows and an Illinois temporary license tag) rolled down his window and began firing a semi-automatic weapon at another car. The shooter ejected his empty magazine onto the highway and the black Audi sped off. The victim of the shooting (a woman) was unharmed but her vehicle was riddled with bullet holes. A subsequent examination of the victim's vehicle revealed six (6) bullet holes throughout the left side of the vehicle – Two bullet holes were in left, rear tire guard, three bullet holes were located directly underneath the left driver side door and a bullet struck the back bumper. Two bullet fragments were found lodged in the vehicle, underneath the door frame.

As the shooting incident was broadcast over the police radio, ATF agents in charge of the operation between their CI and Monroe learned that the description of the black Audi A6 with heavily tinted windows and an Illinois temporary license tag occupied by two people, matched the description of Monroe's vehicle. With the assistance of ATF, who were actively pinging Monroe's cellular telephone via a Court order, multiple marked and unmarked police units and a police helicopter surveilled the area for the black Audi. Eventually, the Audi was located and followed but Monroe apparently became suspicious of the perceived police presence and began to drive erratically and at high speeds. A pursuit ensued and in spite of the deployment of two spike strips at two separate locations (which disabled most of the Audi's tires), Monroe continued to flee, until he crashed the car. Police observed Monroe to be driving in excess of 100 miles per hour during the pursuit. At one point, Monroe forced a marked police unit off the roadway. The entire pursuit lasted approximately nine (9) minutes over a distance of approximately 12 miles.

4

After the black Audi crashed, police immediately arrested Monroe (who was occupying the driver's seat) and arrested Perry (who was occupying the passenger seat). Perry was wearing a satchel or "man bag" which was seized and searched. Inside the satchel police found a clear plastic baggie containing suspected fentanyl, along with U.S. currency. Police also found two digital scales, plastic baggies and an unspent round of ammunition in the car. In addition, multiple pills/capsules/tablets and powdery substances were seized from the car. The substances were transported to the crime lab, tested and confirmed to be fentanyl, cocaine base (crack cocaine), Oxycodone and a mixture or substance containing Tramadol, heroin and fentanyl.

Both Monroe and Perry were ultimately conveyed to the County Jail where they had access to a phone. Phone calls are monitored and recorded by the Department of Justice Services. Perry made several calls to a person believed to be his father. In answer to his father's questions, Perry made various admissions about being involved in a shooting and that police found drugs in the car. During post-*Miranda* interviews, both Perry and Monroe made statements, each admitting they had been in a black Audi that fled from police but both denied being involved in any shooting. In one of the calls, Perry tells an unknown caller that "Lul' Mike" (Monroe) was in the hospital and that "they say we was buckin' at someone."[1]

In another call, Perry is asked by the other participant in the call what controlled substance did the police find. Perry responded – "Sister" and "My Sister" which is street slang for cocaine (one of the substances found with Perry in the crashed vehicle was crack cocaine). When Perry was advised by his father that he has the right to shoot in self-defense if he was being shot at, Perry responded: "Shit, ain't nobody shoot at us." Perry was told by two callers that he should not have been messing with that "dude in the black car." Perry was also telling an

---

[1] "Bucking is slang for shooting."

5

unknown caller that "they" had a "spike" (referring to spike strips used by police) and that he would have been "gone" otherwise. When a caller informed Perry that the news was reported multiple shell casings found in the black Audi, Perry responded: "There's one fucking bullet in that car and it's a whole bullet" which was consistent with the physical evidence seized from the Audi.

The ATF analyzed the data received from the court-ordered precision location warrant (PLW) of Monroe's cellular telephone. The phone was consistently pinging in the area of north St. Louis County both before, during and after the time of the shooting. The data was mapped by investigators and it confirmed the route of the black Audi occupied by Perry and Monroe.

On August 21, 2019 Monroe, aided and abetted by codefendant Treyvon Perry, distributed and possessed with the intent to distribute fentanyl. By this plea agreement, Defendant acknowledges and understands that on August 21, 2019 he conspired with Perry to possess a firearm in furtherance of the drug trafficking crime of possession with intent to distribute fentanyl. The parties further agree that, for purposes of the elements set forth above and the sentencing guidelines calculations below, a semi-automatic pistol is the firearm cited in the offense of conviction and the firearm possessed and discharged by Perry.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines

6

and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense for a violation of 18 U.S.C. § 924(o) is found in USSG §2K2.1. As the defendant used or possessed any firearm or ammunition cited in the offense of conviction with the commission or attempted commission of another offense (a drug trafficking crime), the cross reference at §2K2.1(c)(1)(B) applies. Therefore, USSG §2A2.1(a)(2) is used and the base offense level is 27.

**(2) Specific Offense Characteristics:** The government maintains that 2 levels should be added under Section 3C1.2 as the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The Defendant disagrees and reserves the right to challenge this offense characteristic.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

7

**c. Estimated Total Offense Level:** The parties make no estimate as to the estimated total offense level at this time. The parties reserve the right to provide an estimated total offense level at sentencing, after having had the opportunity to review the presentence investigation report.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

8

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

9

**b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

10

**g.  Forfeiture:**  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

11

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any

12

term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

8/29/2022
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

8·23·2022
Date

MICHAEL MONROE
Defendant

8·29·22
Date

LUKE BAUMSTARK
Attorney for Defendant

13